640 A.2d 1242

COMMONWEALTH of Pennsylvania, Appellee,

v.

Samuel Lee GREEN, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 25, 1993.

Decided April 21, 1994.

Ronold J. Karasek, Bangor, Karl F. Longenbach, Bethlehem, for S.L. Green.

Mark S. Refowich, John F. Spirk, Jr., Easton, Robert A. Graci, Harrisburg, for Com.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

*OPINION OF THE COURT*

CAPPY, Justice.

This is an automatic direct appeal [1] from a sentence of death imposed upon appellant by the Court of Common Pleas of Northampton County following his conviction of murder of the first degree, kidnapping and conspiracy arising from the mur-

---

1. *See,* 42 Pa.C.S. §§ 722(4), 9711(h)(1); Pa.R.A.P.Rule 702(b) and Rule 1941.

der of Richard Bowser, a police officer for the City of Harrisburg.[2] For the reasons that follow, we reverse the judgment of sentence and remand for a new trial.

At trial, the Commonwealth sought to prove that on October 22, 1987, while the victim, Richard Bowser, was asleep in his Harrisburg apartment, Appellant entered the victim's apartment through a window and, without waking the victim, took a set of car keys and left the apartment. Appellant then drove the victim's car to Bonnie Sue Pflugler's residence in Allentown. Appellant and his co-conspirator, Bonnie Sue Pflugler, then drove back to the victim's apartment in Harrisburg ostensibly for the purpose of committing another burglary therein.

The two gained entry into the victim's apartment via an open ground level window. It is the Commonwealth's further contention that the co-conspirators took numerous items, including the victim's .357 magnum service revolver and either forced the victim into the trunk of his automobile or shot him twice in the head first and then placed his body in the trunk. They then drove to an area known as the 27th Street Extension located in the Borough of Northampton where the victim was removed from the trunk of his car and his nude body was buried under a pile of brush.

Following the murder, appellant and his co-conspirator fled and subsequently abandoned the victim's car in Richmond, Virginia. They proceeded to North Carolina were they stole a van which they then drove to Florida. On October 30, 1987, they were arrested in Leon County, Florida, after police found them occupying the stolen van. Pflugler was eventually released from custody after appellant told the Florida authorities that she was a hitchhiker whom he had given a ride. Appellant, however, was taken into custody in Leon County.

The victim's car was discovered in Virginia on November 2, 1987, and prints taken therefrom resulted in appellant and

---

2. It is unclear from a reading of the criminal complaint that was filed against appellant whether the Commonwealth was charging appellant with conspiracy to commit kidnapping, burglary and murder or with conspiracy to commit murder only.

Pflugler being suspects in the disappearance of Bowser. Appellant was interrogated while in prison in Leon County by the Leon County Sheriff's Office as well as the F.B.I. and the Pennsylvania State Police. He finally waived extradition on the stolen vehicle charge, which was the only charge he was then facing, and was transported back to Pennsylvania. While in prison and on the drive to Pennsylvania, appellant gave varying statements to the authorities regarding his and his co-conspirator's activities on the night of October 22, 1987. In each statement, however, appellant maintained that he was not with Pflugler when the victim was taken from his apartment; that he only saw Pflugler and the victim standing by the trunk of the victim's car; and that once they had stopped in the area of the 27th Street Extension, appellant walked away from the car and, while he did not see Pflugler actually shoot the victim, he did hear two shots.

Although both appellant and Pflugler were charged with murder, kidnapping and conspiracy, their cases were severed and appellant proceeded to trial first. He was ultimately found guilty of murder of the first degree, kidnapping and conspiracy following which the jury rendered a sentence of death.[3]

While traditionally this Court, in reviewing cases in which the death penalty has been imposed, has reviewed the sufficiency of the evidence to sustain a conviction of murder of the first degree, we do not believe it is incumbent upon the Court to so review in the instant matter as we are reversing and remanding for a new trial.[4] Accordingly, we shall proceed directly to the issue upon which we base our reversal.

3. Pflugler went to trial several months later, but on the second day of trial, rendered a plea to third degree murder, kidnapping and conspiracy which the Commonwealth accepted.

4. Our duty to review the sufficiency of the evidence to sustain a conviction of murder of the first degree was first enunciated in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1983), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). In *Zettlemoyer*, however, our Court affirmed both the conviction of murder of the first degree and the sentence of death. Accordingly, the Court found that in order to properly perform our statutory duty under the Sentencing

■ Appellant contends that the Commonwealth failed to disclose certain exculpatory evidence prior to trial in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Pa.R.Crim.P.Rule 305.[5] Appellant points specifically to statements made by one Thomas Moser who informed the investigating officers that following the murder, he encountered Pflugler in a bar and that she told him that she did something really big; that she could sit big time for it; that she shot someone; and that she killed a cop.[6] Prior to trial, appellant made a general request for all favorable or exculpatory statements in the Commonwealth's possession. Despite their knowledge of Moser's statements prior to appellant's trial, the Commonwealth failed to disclose this evidence to appellant in discovery or at any time during his trial. Indeed, the defense did not learn of Moser's statement until Moser was called to testify on behalf of the Commonwealth at the subsequent trial of Pflugler. The defense then filed supplemental post-trial motions arguing, *inter alia,* the Commonwealth's failure to disclose Moser's statements. The trial court found that Moser's statements were neither admissible nor exculpatory and on that basis ruled appellant's argument to be without merit. The trial court's ruling was clearly in error.

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the defendant, following his conviction of

Code, 42 Pa.C.S. § 9711(h), to review a sentence of death to determine whether the sentence of death was the product of "passion, prejudice or some other arbitrary factor," and whether the sentence imposed is "excessive or disproportionate to the penalty imposed in similar cases," we would also review the sufficiency of the evidence regarding the conviction of first degree murder even where the defendant does not specifically raise that issue. Where, as here, we reverse on an issue which bears heavily on the evidence and will not be reviewing the sentence of death, a review of the sufficiency of the evidence is clearly unnecessary and unwarranted.

5. We would note that the issue was not raised under our state constitution.

6. Apparently the Commonwealth was in possession of two statements made by Moser, one dated June 22, 1988 and the other September 22, 1988, both of which contained this same information regarding Pflugler's alleged statements.

murder in the first degree and sentence of death, learned of an extrajudicial statement of his accomplice, who had been tried separately, wherein the accomplice admitted the actual homicide. The prosecutor in *Brady* had failed to disclose this statement notwithstanding an earlier timely request by the defendant for all statements of the co-defendant. The United States Supreme Court there held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196–1197, 10 L.Ed.2d at 218. The Court noted further that

> [a] prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not "the result of guile," to use the words of the Court of Appeals.

*Id.* at 88, 83 S.Ct. at 1197, 10 L.Ed.2d at 219.

Recently, in *Commonwealth v. Moose*, 529 Pa. 218, 602 A.2d 1265 (1992), this Court discussed in detail the holding in *Brady* and its progeny. As we noted there, materiality is determined by different standards depending upon whether trial counsel made a specific or a general request for exculpatory evidence. For instance, where the defense gives the prosecution notice of exactly what the defense desires, the test of materiality is whether the evidence might have affected the outcome of the trial. *Commonwealth v. Moose*, 529 Pa. at 233, 602 A.2d at 1272, *quoting United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342, 350 (1976). Where, as here, a general, as opposed to specific, request for exculpatory evidence is made, the evidence is material "if the omitted evidence creates a reasonable doubt that did not otherwise exist ..." *Moose*, 529 Pa. at 233, 602 A.2d at 1272, *quoting Agurs*, 427 U.S. at 112, 96 S.Ct. at 2402, 49 L.Ed.2d at 355. The Court in *Agurs* further stated that

the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

*Agurs,* 427 U.S. at 112–113, 96 S.Ct. at 2402, 49 L.Ed.2d at 355. In determining the materiality of the omitted evidence we must, therefore, consider any adverse effect that the prosecutor's failure to disclose might have had on not only the presentation of the defense at trial, but the preparation of the defense as well. *See, United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Upon application of these principles to the facts of the instant case, we conclude that the evidence withheld by the Commonwealth is relevant and material.

Throughout appellant's trial, the Commonwealth sought to establish that appellant was the actual shooter. The Commonwealth did so based solely on circumstantial evidence and inferences. No murder weapon was ever located and while appellant's fingerprints were found on items located inside the victim's apartment as well as in his automobile, Pflugler's prints were also discovered in the victim's vehicle. As the Commonwealth's closing argument at guilt phase amply demonstrates, it was the Commonwealth's objective to have the jury believe that appellant, and not his co-conspirator, actually shot Officer Bowser by referencing the facts that the victim was of a heavy build; that appellant was much bigger than Pflugler; and that he lifted weights and thus was the only one of the two who was strong enough to move a person the size of the victim. The Commonwealth argued this even though there was no evidence suggesting that the victim was shot or killed before having been transferred in the trunk of his car. Alternatively, the Commonwealth argued to the jury that it could find appellant guilty of murder of the first degree even if they did not conclude that he was the actual shooter on the

basis that he and Pflugler shared guilt under the law for each other's actions.[7]

A review of the record thus, evinces the relevancy and materiality of this omitted evidence at the guilt phase. First, Moser's statements to the police in no way implicated appellant in the murder. Instead, they implicated only Pflugler. Moreover, knowledge of Pflugler's statement to Moser certainly would have opened another avenue of investigation for the defense that may well have led to further exculpatory evidence. Had the defense been aware of Moser's statements, it may also have altered its trial strategy, especially in regards to appellant's decision not to testify since Moser's statements were consistent with appellant's own statements to the police.

The omitted evidence was also clearly relevant and material to the issue of appellant's punishment. It is beyond peradventure that the statements of Moser would have provided the defense with strong evidence of mitigation. During the penalty phase, the Commonwealth incorporated all the evidence from guilt phase and argued therefrom that the evidence showed that appellant alone shot Officer Bowser twice in the head and that appellant alone transported Officer Bowser in the trunk of his car to a secluded area and executed him. Again, the Commonwealth argued this without any direct evidence in support thereof.

The trial court found, and the Commonwealth so contends, that in order for the evidence to be "material" under

7. We believe it incumbent upon us to note at this point that the Commonwealth's theory of accomplice liability was erroneous under the law of this Commonwealth. It is well established that the intent to kill cannot be deemed shared as between two persons simply because both were present at the scene of the murder. This Court has unequivocally held that,

> [t]o determine the kind of homicide of which the accomplice is guilty, it is necessary to look to *his* state of mind; the requisite mental state must be proved beyond a reasonable doubt to be one *which the accomplice harbored and cannot depend upon proof of the intent to kill only in the principal.*

*Commonwealth v. Bachert*, 499 Pa. 398, 406, 453 A.2d 931, 935 (1982), *cert. denied*, 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983) (emphasis added).

the *Brady* standard, the omitted evidence must be of a type admissible at trial. The trial court then concluded that the statement given by Moser would not be admissible under an exception to the hearsay rule as a declaration against penal interest because it was not given under reliable circumstances. We do not agree that *Brady* requires that the omitted evidence be admissible before it can be deemed material.

In *Brady,* as here, the evidence withheld by the prosecution was a statement made by the co-defendant admitting the actual homicide. Contrary to the statement at issue here, however, the undisclosed confession in *Brady* clearly implicated Brady as also wanting to kill the victim. Specifically, the undisclosed confession contained statements to the effect that while both Brady and his co-defendant wanted to kill the victim, they disagreed on the manner for so doing. Because Brady had admitted at trial his participation in the murder, claiming only that he did not do the actual shooting, the Court there correctly held that the omitted evidence would not have reduced Brady's offense below first degree murder since that evidence did not absolve the defendant of criminal liability for the murder and was, therefore, significant only as to the punishment of Brady. Thus, it is clear that the holding in *Brady* as to the admissibility of the evidence was based solely upon the precise facts of that case and in no way mandates that the evidence first be admissible before it can be deemed "material" to the defense.

For all the foregoing reasons, we conclude that the failure of the Commonwealth to disclose the statements of Moser constitutes a violation of *Brady* and requires a new trial.

Having concluded that appellant's due process rights were violated by the Commonwealth's failure to disclose this information, we have no hesitancy in also finding a violation of Rule 305 B of the Pennsylvania Rules of Criminal Procedure.

As this Court recently noted, Rule 305 of the Pennsylvania Rules of Criminal Procedure was promulgated in response to the dictates of *Brady. See, Commonwealth v. Montgomery,*

608

533 Pa. 491, 626 A.2d 109 (1993). Rule 305 B provides in pertinent part:

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth;

Under the unequivocal language of Rule 305B(1)(a), the Commonwealth violated this procedural rule when it failed to provide Moser's statements to the defense. First, the Commonwealth concedes that it obtained the statement of Moser prior to appellant's trial. Second, as we have already concluded, the omitted evidence was favorable to appellant's defense and clearly material to both the guilt phase and the punishment phase.

■ The Commonwealth contends that Rule 305 B(2)(c) applies and that it was therefore not compelled to provide the statements of Moser to the defense.[8] We simply do not agree. Under its clear language, Rule 305B(2)(c) applies only to statements, whether written or recorded, of a co-defendant. The statements at issue here do not fit within that category. Rather, as noted previously, the statements of Moser contain evidence favorable to appellant and were, therefore, subject to the mandatory disclosure requirements of Rule 305B(1)(a).

8. Pa.R.Crim.Pro.Rule 305B(2)(c) provides:

*(2) Discretionary with the Court:* In all court cases, except as otherwise provided in Rule 263 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

Therefore, having failed to disclose to the defense the statements of Moser prior to or during trial, the Commonwealth clearly violated Rule 305B.

For all the foregoing reasons, the judgment of sentence is reversed and the case is remanded for a new trial.

Mr. Justice LARSEN did not participate in the decision of this matter.

Mr. Justice MONTEMURO, who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.

(c) all written or recorded statements, and substantially verbatim oral statements, made by co-defendants, and by co-conspirators or accomplices, whether such individuals have been charged or not;