J-S04003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| IRVIN HARPER | : | |
| | : | |
| Appellant | : | No. 1754 EDA 2025 |

Appeal from the PCRA Order Entered June 10, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011481-2016

BEFORE: LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED APRIL 7, 2026**

Irvin Harper appeals from the order, entered in the Court of Common Pleas of Philadelphia County, denying his Post-Conviction Relief Act (PCRA)[1] petition. After review, we affirm.

In December of 2016, Harper was charged with various offenses, including possession of a controlled substance with intent to deliver (PWID), possession of a controlled substance, possession of a firearm without a license, and several other offenses, some of which were sexual in nature. Harper proceeded to a jury trial on the drug charges in June and July of 2018; the possession of a firearm without a license charge was bifurcated and set for a separate proceeding after trial.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

At trial, the Commonwealth presented testimony from Detective Daniel O'Malley of the Philadelphia Police Department's Special Victims Unit, as well as Sergeant James Schuck and Officer Kevin Keys from the Narcotics Field Unit.

Detective O'Malley testified regarding the investigation into Harper and the execution of the arrest and search warrants for Harper and his apartment. *See* N.T. Trial, 7/2/18, at 39-61. Detective O'Malley described "a large quantity of narcotics in plain view on the kitchen table and on the floor" as well as other items tucked away in cabinets. *Id.* at 61. He also identified a handgun found in a Tupperware container inside a mirrored cabinet in Harper's bedroom, as well as the property receipt for the handgun. *Id.* at 62-63. Additionally, Detective O'Malley testified about finding various objects that proved the residence belonged to Harper, finding a large bowl "inside the cabinet [] with white power[,]" and calling the Narcotics Field Unit to process the drugs found on scene. *Id.* at 65-66.

Officer Keys testified as an expert in the field of narcotics. *Id.*, 6/29/18, at 35. He opined that the drugs recovered from Harper's apartment were possessed with the intent to deliver based on the amount of heroin and cocaine found, the denominations of cash recovered, stamps used to brand drug packaging, and the gun found in Harper's bedroom. *Id.* at 40-46.

Sergeant Schuck testified that his unit was called to handle the narcotics recovered from Harper's apartment. *Id.* at 6-7. Upon arriving at the apartment, the Special Victims Unit officers directed Sergeant Schuck and

another officer assigned to him, Officer Bruce Cleaver, to the bagging materials, scales, grinders, and bags of cocaine and heroin that were on the kitchen table. *Id.* at 7. Sergeant Schuck and Officer Cleaver conducted an additional search of the property and then prepared the evidence for transport to police headquarters. *Id.* at 8. Sergeant Schuck also testified regarding the property receipts for the evidence obtained, which included narcotics, paraphernalia, a piece of mail, and the money recovered from Harper at the scene. *Id.* at 9-11.

Following trial, on July 6, 2018, the jury found Harper guilty of PWID and possession of a controlled substance. At a hearing on July 9, 2018, Harper also pled guilty to the bifurcated charge of possession of a firearm without a license. The trial court sentenced Harper to three to six years' incarceration for PWID and five to ten years' incarceration for possession of a firearm without a license, resulting in an aggregate sentence of eight to sixteen years of incarceration.[2] Harper filed a direct appeal, this Court affirmed Harper's judgment of sentence, and the Pennsylvania Supreme Court denied allowance of appeal. *See Commonwealth v. Harper*, 241 A.3d 398 (Pa. Super. 2020) (Table).[3]

_____

[2] Harper's conviction for possession of a controlled substance was *nolle prossed* as part of his guilty plea.

[3] Though irrelevant to our current disposition, Harper filed his first PCRA petition in February of 2021. The petition was dismissed on April 29, 2021, this Court affirmed the dismissal of the petition, and the Pennsylvania
*(Footnote Continued Next Page)*

On May 29, 2024, the Commonwealth provided Harper a disclosure notice for Sergeant Schuck. The disclosure contained the findings of two Internal Affairs Division (IAD) investigations into Sergeant Schuck, neither of which related directly to Harper's case. The first investigation concluded that Sergeant Schuck violated department policy by failing to supervise a subordinate. The second investigation addressed a potential warrantless search conducted by Sergeant Schuck but did not result in any finding of misconduct.

On August 21, 2024, Harper filed the instant *pro se* PCRA petition alleging a **Brady**[4] violation. Harper's petition alleged that the Commonwealth failed to disclose material information regarding Sergeant Schuck based on the IAD's findings. The Commonwealth filed a motion to dismiss Harper's PCRA petition on February 6, 2025, claiming that it was meritless and should be dismissed because Sergeant Schuck played a minimal role in Harper's investigation and the evidence used against Harper was lawfully obtained by multiple investigators.

On May 8, 2025, the PCRA court issued a Pa.R.Crim.P. 907 notice on of its intent to dismiss the petition, explaining that Harper failed to show that the disclosure of Sergeant Schuck's alleged misconduct would have impacted Harper's trial strategy in a material way, or that there was a reasonable

---

Supreme Court denied allowance of appeal. **See id.**, 304 A.3d 723 (Pa. Super. 2023) (Table), **appeal denied**, 308 A.3d 774 (Pa. 2023) (Table).

[4] **Brady v. Maryland**, 373 U.S. 83 (1963).

probability of a different outcome at trial if the information had been presented to the jury. The PCRA court ultimately dismissed Harper's petition on June 10, 2025.

Harper timely appealed, and both Harper and the PCRA court have complied with Pa.R.A.P. 1925. Harper now raises the following claims for our review:

1. Whether the PCRA court was in error for not granting [Harper] a new trial based on the facts of his ***Brady***/***Giglio***[ ***v. United States***, 405 U.S. 150 (1972)] violation[?]

2. Whether the PCRA court was in error in finding that [Harper] did not meet the materiality requirement according to the rules of ***Brady***, ***Giglio***, ***Kyles v. Whitley***, [514 U.S. 419 (1995)], and all the case[s] of the United States Supreme Court [regarding] ***Brady*** violations[?]

3. Whether the PCRA court was in error for failing to grant [Harper] an evidentiary hearing for the ***Brady***/***Giglio*** violation?

4. Whether the PCRA court was in error when it made a[n] improper analysis of materiality according to the rules set by the United States Supreme Court?

Appellant's Brief, at 7.

Prior to addressing Harper's claims, we must determine whether his PCRA petition was timely filed and, if not, whether he has satisfied an exception to the PCRA time bar. Any PCRA petition "shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final for the purposes of the PCRA "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the

expiration of time for seeking the review." *Id.* at § 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. *See Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010).

Instantly, Harper's judgment of sentence became final, for purposes of the PCRA, on November 7, 2020, when the time expired for him to file a petition for allowance of appeal with the Pennsylvania Supreme Court. *See* 42 Pa.C.S.A. § 9545(b)(3); Pa.R.A.P. 1113(a) (providing thirty days for appeal to Pennsylvania Supreme Court after entry of Superior Court order). Thus, Harper had until November 7, 2021, to file a timely PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1). Consequently, Harper's instant petition, filed on August 21, 2024, is facially untimely.

However, Pennsylvania courts may consider an untimely petition if the petitioner can plead and prove one of the three exceptions set forth at 42 Pa.C.S.A. §§ 9545(b)(1)(i)-(iii):

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

- 6 -

*Id.* Any petition invoking one of these exceptions "shall be filed within one year of the date the claim could have been presented." *Id.* at § 9545(b)(2). It is "well-settled" that a *Brady* violation may fall within the governmental interference exception. *Commonwealth v. Natividad*, 200 A.3d 11, 28 (Pa. 2019). Nevertheless, "the petitioner must plead and prove the failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the exercise of due diligence." *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1268 (Pa. 2008).

Here, we find it sufficient that the Commonwealth provided Harper with the disclosure notice after the IAD investigation to show that Harper could not have previously raised the claim because of government interference or obtained the information earlier through the exercise of due diligence. *See Natividad*, 200 A.3d at 29 (finding section 9545(b)(1)(ii) satisfied where appellant filed petition based upon facts previously unknown to him until Commonwealth provided him access to case file). Further, Harper's petition is timely pursuant section 9545(b)(2) because he filed it within one year of receiving the disclosure notice from the Commonwealth. *Id.* Accordingly, we turn to the merits of Harper's appeal.[5]

_____

[5] Harper's brief fails to comply with Pa.R.A.P. 2119(a)'s requirement that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein[.]" *Id.* Instead, Harper's argument is presented under an
*(Footnote Continued Next Page)*

Harper argues that he suffered prejudice because his trial strategy would have been different had the IAD investigations been disclosed to him earlier; namely, Harper claims his strategy would have been to impeach Sergeant Schuck's credibility at trial. With this information, Harper claims his attorney could have argued "to the jury that the credibility of the Commonwealth's entire case could not be trusted[.]" Appellant's Brief, at 16. In particular, Harper claims that "the **Brady** information would [have] cast doubt on Schuck's testimony that officers told him the evidence was found in the third floor apartment." *Id.* at 26.

"Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Cox**, 146 A.3d 221, 226 n.9 (Pa. 2016) (citation omitted). "Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." **Commonwealth v. Boyd**, 923 A.2d 513, 515 (Pa. Super. 2007). The PCRA court's credibility determinations, when supported by the record, are binding on this Court;

_____

assortment of headings, including "Legal Error[,]" "**Brady** Analysis[,]" and "Trial Strategy[,]" which do not correspond to his enumerated statement of questions involved. Appellant's Brief, at 7, 11, 18, 21. While we may liberally construe *pro se* filings, a *pro se* litigant enjoys no special benefit. **Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (Pa. Super. 2017). However, as we are able to understand the thrust of Harper's argument, our review has not been substantially impeded by his lack of compliance, and we decline to quash his appeal. **See Clark v. Peugh**, 257 A.3d 1260, 1264 n.1 (Pa. Super. 2021).

however, we apply a *de novo* standard of review to the PCRA court's legal conclusions. ***Natividad***, 200 A.3d at 25.

There are three elements to a ***Brady*** claim: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence was willfully or inadvertently suppressed by the State; and (3) prejudice ensued. ***See Natividad***, 200 A.3d at 25–26 (citing ***Strickler v. Greene***, 527 U.S. 263, 281–82 (1999)).

> Pursuant to ***Brady*** and its progeny, the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." ***Kyles*** [], 514 U.S. [at] 437 [] (1995). However, there is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.
>
> Instead, "favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." [***Id.***] at 433[.] A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. In evaluating whether a reasonable probability of a different outcome has been demonstrated, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." [***Id.***] at 434[.] A defendant thus "need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." ***Id.*** at 434–45[.] Rather, a defendant need only show that the favorable evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." ***Id.*** at 435[.]

***Natividad***, 200 A.3d at 26 (some internal citations and quotations omitted).

"Materiality" extends to evidence that affects the credibility of witnesses, rather than only to exculpatory evidence. ***Commonwealth v. Cam Ly***, 980 A.2d 61, 76 (Pa. 2009) (citing ***Giglio***, 405 U.S. at 154 (1972)). Additionally, the Pennsylvania Supreme Court has held that ***Brady***'s protection encompasses a defendant's ability to investigate alternate defense theories and formulate trial strategy. ***Cam Ly***, 980 A.2d at 76 (citing ***Commonwealth v. Green***, 640 A.2d 1242, 1245 (Pa. 1994)). As to a ***Brady*** claim brought pursuant the PCRA, "a[n appellant] must demonstrate that the alleged ***Brady*** violation 'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" ***Cam Ly***, 980 A.2d at 76 (quoting ***Commonwealth v. Copenhefer***, 719 A.2d 252, 259 (Pa. 1998)).

The PCRA court concluded that Harper failed to establish a reasonable probability of a different outcome at trial had the evidence been presented because "[Sergeant] Schuck's role in the [] investigation was extremely limited." PCRA Court Opinion, 8/5/25, at 11. The PCRA court recounted that Detective O'Malley was the officer who applied for, received, and executed arrest and search warrants, wherein he observed narcotics in plain view, while another officer, conducting a further search, recovered a firearm. ***Id.*** The PCRA court summarized Sergeant Schuck's role as "cataloguing the narcotics and paraphernalia that had already been seized by [the Special Victims Unit officers.] ***Id.*** We agree.

- 10 -

Harper's argument fails because he cannot establish that he was prejudiced by the non-disclosure of Sergeant Schuck's misconduct prior to trial. To establish prejudice, Harper must demonstrate a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Commonwealth v. Simpson*, 66 A.3d 253, 264 (Pa. 2013) (quoting *Commonwealth v. Clark*, 961 A.2d 80, 89 (Pa. 2008)). Furthermore, when the prosecution's failure to disclose information relates to a witness' credibility, the appellant must "demonstrate that the reliability of the witness may well be determinative of his guilt or innocence." *Simpson*, 66 A.3d at 266 (quoting *Commonwealth v. Morales*, 701 A.2d 516, 523 (Pa. 1997)).

Based upon the testimony and evidence recounted above, even if Harper was aware of the IAD investigations and able to use them to impeach Sergeant Schuck at trial, there is not a reasonable probability that the outcome would have been different. As noted by the PCRA court, Sergeant Schuck's role in the investigation was extremely limited, there was no allegation that he engaged in any misconduct in Harper's case, and the Special Victims Unit officers conducted the search and seizure of the property, as well as effectuated Harper's arrest, prior to Sergeant Schuck's arrival. Accordingly, the PCRA court did not err in denying Harper relief on his *Brady* claim.

Harper's claim that the PCRA court erred by not granting him a hearing is, likewise, meritless, where we have determined his petition did not contain genuine issues of material fact. *Commonwealth v. Springer*, 961 A.2d

1262, 1264 (Pa. Super. 2008). Based on our conclusion that the PCRA court properly dismissed Harper's petition, we also find that it did not err in failing to hold a hearing. Therefore, we affirm the PCRA court's order denying Harper's petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/7/2026